IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT HAZARD** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-7057** |
| | : | |
| **B&B HOTELS US, INC., AMIR** | : | |
| **MUSTAFA** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                          **May 29, 2026**

A Florida hotel company recruited a Pennsylvania hotel management executive to join it as an executive by promising he would work with an experienced chief executive officer and legal team and to pay him bonuses and a severance package. The Pennsylvanian accepted this offer in Fall 2022. The company reorganized a few years later with a new chief executive officer and less experienced in-house counsel. The Pennsylvanian objected to perceived mismanagement with the new team and refused to make statements he viewed as misleading to stakeholders. The new chief executive officer interpreted the Pennsylvanian's concerns as a resignation. The Pennsylvanian sued the Florida hotel company and its new chief executive officer to enforce his understanding of the 2022 promises. We denied the new chief executive officer's motion to transfer to Florida and his argument the Pennsylvania Wage Payment and Collection Law does not apply to the former employee over two months ago.

But the same lawyers return moving to dismiss with the same arguments and others on behalf of the Florida hotel company. We again decline to transfer and find Pennsylvania's Wage Payment and Collection Law applies. But we agree the Pennsylvanian does not plead facts allowing us to plausibly infer a breach of contract related to a competent team, breach of an implied contract for employment, promissory estoppel, unjust enrichment related to bonuses and

severance, and fraudulent inducement. But he pleads facts allowing him to proceed on his wrongful termination claim, breach of contract claim related to his severance package, unjust enrichment claim related to expense reimbursements, and Pennsylvania Wage Payment and Collection Law claim.

## I.  Alleged Facts

B&B Hotels US, Inc. is headquartered in Miami and began recruiting Pennsylvanian Robert Hazard in Fall 2022 to become its Senior Vice President of Development and Asset Management.[1] Mr. Hazard then worked as the Executive Vice President of a hotel asset management firm.[2] B&B Hotels assured he would work with an experienced chief executive officer and legal team, it would provide a severance package if his employment with B&B Hotels ended "for reasons beyond his control," and it would pay him short-term and long-term bonuses if he met certain requirements.[3] Mr. Hazard accepted B&B Hotels's offer because of these assurances and began working for it in November 2022.[4] Mr. Hazard worked from his Pennsylvania home two-thirds of the time.[5]

B&B Hotels reorganized its leadership team in early 2025.[6] Amir Mustafa began as B&B Hotels's chief executive officer in April 2025.[7] Executive Mustafa did not have as much experience as B&B Hotels's previous chief executive officer.[8] Executive Mustafa hired inexperienced in-house counsel to replace the outside counsel working with Mr. Hazard.[9] B&B Hotels began mismanaging several projects in Summer 2025 and misleading stakeholders about the projects' statuses.[10] B&B Hotels did not complete expected reviews before submitting materials to stakeholders during this time.[11] Mr. Hazard refused to "make misleading representations to Stakeholders that painted [B&B Hotels's] business in a more positive light than . . . warranted."[12]

Mr. Hazard tried to raise his concerns to Executive Mustafa in early September 2025 but Executive Mustafa interpreted their conversation as a resignation.[13] Mr. Hazard emphasized he did not want to resign.[14] But Executive Mustafa still emailed Mr. Hazard on September 9, 2025 insisting he resigned.[15]

## II.    Analysis

Mr. Hazard now sues B&B Hotels for (1) wrongful termination, (2) breach of contract, (3) breach of oral contract, (4) breach of implied contract for employment based on additional consideration, (5) promissory estoppel, (6) unjust enrichment, (7) fraudulent inducement, and (8) violating Pennsylvania's Wage Payment and Collection Law.[16] Mr. Hazard also sues Executive Mustafa for violating Pennsylvania's Wage Payment and Collection Law.[17] We denied Executive Mustafa's Motion to dismiss this claim and to transfer the case to the Southern District of Florida on March 20, 2026.[18]

B&B Hotels (with the same counsel as Executive Mustafa) waited and then raised the same transfer argument we denied on March 20, 2026 along with moving to dismiss Mr. Hazard's claims for not pleading facts allowing us to plausibly infer a claim.[19] We agree with B&B Hotels in part as to pleaded claims but again find no basis to transfer a Pennsylvanian's claim for compensation.

### A.  We again find no basis to transfer Mr. Hazard's claims to Florida.

B&B Hotels moves to transfer venue to the Southern District of Florida despite our reasoned denial of its argument when presented on Executive Mustafa's behalf a couple months ago.[20] It largely repeats Executive Mustafa's arguments.[21] Mr. Hazard responds res judicata or "the law of the case" doctrine requires us to deny B&B Hotels's Motion.[22] We again find no basis to transfer.

Res judicata—or claim preclusion—does not apply because its requirements include "a final judgment on the merits" and "a subsequent suit based on the same cause of action."[23]

The law of the case doctrine does apply because it is "concerned with the extent to which the law applied in decisions at various stages of the *same litigation* becomes the governing legal precept in later stages."[24] The doctrine states we continue to apply our decisions on "a rule of law" to "the same issues in subsequent stages in the litigation."[25] But the law of the case doctrine is "discretionary" and "does not prevent [us] from reconsidering" our earlier rulings.[26] We reconsider an earlier decision under the law of the case doctrine if one of three "extraordinary circumstances" warranting reconsideration are present: (1) "an intervening change in the law[,]" (2) "new evidence has become available[,]" or (3) "reconsideration is necessary to prevent clear error or a manifest injustice."[27]

There are no extraordinary circumstances requiring us to reconsider our earlier decision to deny transfer. B&B Hotels does not direct us to an intervening change in law or new evidence requiring us to reconsider our decision. And we do not need to reconsider our decision to prevent clear error or manifest injustice. Although B&B Hotels argues we should transfer because Mr. Hazard's additional claims against B&B Hotels means there is a larger "world of operative facts" to consider, it repeats Executive Mustafa's arguments.[28] And we can decide the seven additional claims Mr. Hazard brings against B&B Hotels—including claims for wrongful termination, breach of contract, promissory estoppel, unjust enrichment, and fraudulent inducement—as easily as our colleagues in Florida. We deny B&B Hotels's Motion to transfer venue.

**B. We apply Pennsylvania law when evaluating the pleading sufficiency of most of Mr. Hazard's claims.**

B&B Hotels first argues we should dismiss all of Mr. Hazard's claims aside from his Pennsylvania Wage Payment and Collection Law claim because "Pennsylvania common law does

not apply" to them.[29] We construe this reference as a choice of law argument regarding his first seven claims against B&B Hotels. Mr. Hazard responds Pennsylvania law should apply because he worked in Pennsylvania two-thirds of the time.[30] Pennsylvania law applies to Mr. Hazard's breach of contract, promissory estoppel, unjust enrichment, and fraudulent inducement claims. We do not determine which law applies to Mr. Hazard's wrongful termination claim at this stage.

We apply Pennsylvania's choice of law rules as a federal court in Pennsylvania exercising diversity jurisdiction.[31] Under Pennsylvania law we ask two questions to determine which state's law applies to a particular claim: (1) whether there is an actual conflict between the states' laws and (2) if there is an actual conflict, "which state has the greater interest in the application of its law."[32]

There is no conflict between Pennsylvania and Florida law on Mr. Hazard's promissory estoppel, unjust enrichment, and fraudulent inducement claims.[33] There also is no conflict between Pennsylvania and Florida law on Mr. Hazard's breach of contract claims.[34] We apply Pennsylvania law to these claims.[35]

But there is a conflict between Pennsylvania and Florida law on Mr. Hazard's wrongful termination claim. Pennsylvania allows wrongful termination claims "in very limited circumstances, where the [employer's] discharge of an at-will employee violated a clear public policy."[36] But Florida does not allow at-will employees to bring wrongful termination claims at all.[37] The two states look at this issue differently and have interests in applying their laws to this case; we face a true conflict.[38]

We next consider whether Pennsylvania or Florida has "the greater interest in the application of its law."[39] The state with the greater interest is the one "having the most significant contacts or relationships with the particular issue."[40] We consider several factors to determine

5

which state has a greater interest in applying its law to a tort claim including: (1) "the place where the injury occurred," (2) "the place where the conduct causing the injury occurred," (3) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship, if any, between the parties is centered."[41] We analyze these factors and weigh contacts with a state "on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue."[42]

But the parties dispute facts—including where Mr. Hazard spent most of his time working—which could impact our analysis. We decline to decide whether Pennsylvania or Florida law applies until the parties develop a record.[43]

Weighing those factors will await another day. So, because Florida does not recognize wrongful termination claims, we only analyze whether Mr. Hazard stated a wrongful termination claim under Pennsylvania law.

### C. Mr. Hazard pleaded facts allowing us to plausibly infer B&B Hotels fired him for opposing illegal activities under Pennsylvania law.

Mr. Hazard sues B&B Hotels for wrongful termination and claims it fired him because he refused to "engage in unethical, fraudulent and/or illegal activity."[44] B&B Hotels asks us to dismiss Mr. Hazard's wrongful termination claim because Mr. Hazard does not plead facts showing the public policy exception to at-will employment applies.[45] Mr. Hazard responds B&B Hotels asked him to engage in deceptive business practices violating Pennsylvania criminal law by misrepresenting B&B Hotels's financial condition to investors and stakeholders.[46] Mr. Hazard pleads facts allowing us to plausibly infer a wrongful termination claim under Pennsylvania law.

Pennsylvania allows an at-will employee to bring a wrongful termination claim against his former employer "in the rare case where the termination violates 'a clear mandate of [Pennsylvania] public policy.'"[47] An employer's decision to fire an at-will employee can violate

6

Pennsylvania public policy when (1) the employer "require[d] an employee to commit a crime," (2) the employer "prevent[ed] an employee from complying with a statutorily imposed duty," or (3) a statute "specifically prohibited" the employer from "discharg[ing] [the] employee."[48]

Mr. Hazard pleaded facts allowing us to plausibly infer B&B Hotels fired him because he refused to commit a crime. He alleged B&B Hotels mismanaged several projects in Summer 2025 and misled stakeholders about the projects' statuses.[49] He also pleaded B&B Hotels did not complete required reviews before submitting materials to stakeholders.[50] B&B Hotels fired him after he refused to "make misleading representations to Stakeholders that painted [B&B Hotels's] business in a more positive light than . . . warranted."[51] He argues the conduct B&B Hotels asked him to engage in would violate a Pennsylvania law criminalizing deceptive or fraudulent business practices including "mak[ing] or induc[ing] others to rely on a false or misleading material statement to induce an investor to invest in a business venture."[52] One of our colleagues previously determined an employee states a claim for wrongful termination when he claims his employer fired him for his "refusal to engage in unethical and illegal activity," even where the employee did not plead the specific section of the Pennsylvania General Statutes.[53] We agree. Mr. Hazard sufficiently pleaded facts allowing us to plausibly infer B&B Hotels required him to make a false or misleading statement to induce investors. We will later examine whether, as a matter of choice of law, Pennsylvania law will apply after discovery. But for now we allow Mr. Hazard to proceed on his wrongful termination claim under Pennsylvania Law.

### D. We dismiss Mr. Hazard's breach of contract and breach of oral contract claims in part.

B&B Hotels asks us to dismiss Mr. Hazard's claims for breach of contract and breach of oral contract.[54] Mr. Hazard claims B&B Hotels promised him (1) "it would provide [him] with a defined severance package if his employment did not work out for reasons beyond his control and

that it would reimburse expenses" and (2) "he would earn a certain amount of compensation due to a highly competent leader and legal team supporting his deal success."[55]

B&B Hotels argues we should dismiss Mr. Hazard's breach of contract and breach of oral contract claims because (1) the offer letter Mr. Hazard signed is the parties' only contract and does not show B&B Hotels made him these promises and (2) even if the offer letter is not a fully integrated contract the additional terms Mr. Hazard asserts are too indefinite to form a contract.[56] Mr. Hazard responds B&B Hotels breached its duty of good faith and fair dealing by failing to provide Mr. Hazard with the tools he needed to meet his bonus requirements and breached its contract by failing to pay him severance.[57]

Parties form a binding contract when there is an "offer, acceptance, and consideration."[58] Express contracts can be written or verbal.[59] Mr. Hazard pleaded facts allowing us to plausibly infer B&B Hotels contracted with him to provide him with a severance package if certain conditions are met. But he did not plead facts allowing us to plausibly infer it contracted with him to provide him with a competent team.

### 1. Mr. Hazard pleaded facts allowing us to plausibly infer B&B Hotels breached a contract to provide him with a severance package.

B&B Hotels claims we should today interpret its offer letter to Mr. Hazard as showing, as a matter of law, it only promised to provide him with a severance package under limited circumstances.[60] B&B Hotels attaches the offer letter to its Motion to dismiss.[61] We can consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[62] Mr. Hazard references B&B Hotels's employment offer in his amended Complaint.[63] And he does not dispute the letter's authenticity in his response.[64] We consider the offer letter when resolving this Motion.

The offer letter shows B&B Hotels promised to pay Mr. Hazard twelve months of severance pay if it terminated him without cause and if he executed "a Company-standard release."[65] B&B Hotels argues Mr. Hazard did not plead he executed the Company-standard release required to receive severance pay.[66] Mr. Hazard responds B&B Hotels never sent him a release to execute.[67] This is a classic definition of a disputed fact.

Whether Mr. Hazard satisfied the conditions necessary for B&B Hotels to pay him severance is better addressed at summary judgment or by a fact finder. We deny B&B Hotels's Motion to dismiss Mr. Hazard's contract claims based on failure to pay him severance.

### 2. We dismiss Mr. Hazard's claim for breach of contract based on failure to provide him with a competent team.

B&B Hotels argues its offer letter does not include terms requiring it to provide Mr. Hazard with a competent team, we should not look beyond the offer letter for additional terms, and even if we look beyond the offer letter the terms Mr. Hazard claims are indefinite.[68] Mr. Hazard responds B&B Hotels promised to provide him with bonuses if he met certain requirements and breached its duty of good faith and fair dealing by failing to provide him with the tools he needed to meet those requirements.[69] We agree with B&B Hotels as to dismissing the breach of contract claim without prejudice to Mr. Hazard amending in accord with our later scheduling Order.

The parties seemingly agree we can review the offer letter; it shows B&B Hotels included short-term and long-term bonus opportunities for Mr. Hazard if he met certain requirements, such as signing five hotel contracts and opening three hotels.[70] But B&B Hotels did not promise to provide him with a competent team in the offer letter.[71] Even if we looked beyond the offer letter, a promise to provide Mr. Hazard with a competent team is not definite enough to form a contract. A contract's terms are "sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which [we] can provide an appropriate remedy."[72] If we cannot

9

determine whether a party performed the contact because of "indefiniteness or incompleteness" then we "must find that no contract existed in the first place."[73] We cannot determine whether B&B Hotels provided Mr. Hazard with a "competent leader and legal team."[74] We dismiss Mr. Hazard's breach of contract claim based on failure to provide a competent team without prejudice.

### E. We dismiss Mr. Hazard's claim for breach of implied contract for employment based on additional consideration.

Mr. Hazard alleges he had an "implied contract for employment" with B&B Hotels which B&B Hotels breached by terminating him "without just cause."[75] B&B Hotels argues we should dismiss Mr. Hazard's claim because he has not pleaded facts allowing us to plausibly infer the additional consideration necessary to create an implied contract for employment.[76] Mr. Hazard counters he pleaded additional consideration because B&B Hotels convinced him to leave "a lucrative and stable position" before terminating him after working for less than three years.[77] We agree with B&B Hotels.

We presume an employment relationship is at-will and the employer can terminate its employee at any time.[78] One of the ways an employee can show his employment was not at-will is by establishing he had an implied-in-fact contract for employment.[79] An employee can establish an implied-in-fact contract by showing he "gave his employer additional consideration other than the services for which he was hired."[80] "Additional consideration exists 'when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform.'"[81] For example, there is sufficient consideration creating an implied-in-fact contract for employment where an employee "in response to [an] employer's persistent recruitment efforts, gave up a stable position in another state, sold his house, and relocated to a new city with his pregnant wife, only to be fired after sixteen days on the job."[82] But there is no additional

10

consideration where an employee "has suffered detriments, in the course of his or her employment, that are 'commensurate with those incurred by all manner of salaried professionals.'"[83] For example, there is no additional consideration where an employee moved for the job eight years before and had "foregone other employment opportunities over the years."[84]

Mr. Hazard alleges he gave B&B Hotels additional consideration by "vacating his lucrative and stable [job] and foregoing other employment opportunities" after accepting B&B Hotels's offer.[85] Mr. Hazard did not relocate for his position with B&B Hotels and worked for B&B Hotels for almost three years.[86] Mr. Hazard has not alleged facts suggesting he underwent a substantial hardship. We dismiss Mr. Hazard's claim for breach of implied contract without prejudice.

### F. We dismiss Mr. Hazard's claim for promissory estoppel.

Mr. Hazard claims he detrimentally relied on B&B Hotels's promise to retain "a competent leader and effective legal support" to help him attain his "compensation potential."[87] B&B Hotels asks us to dismiss Mr. Hazard's promissory estoppel claim because the parties' written agreement precludes it and he does not otherwise plead facts allowing us to plausibly infer it.[88] Mr. Hazard reiterates B&B Hotels did not fulfill its promise to him because it hired "an incompetent [chief executive officer] and In-House counsel with limited experience" which prevented him from realizing "his compensation potential."[89] We agree with B&B Hotels.

A person bringing a promissory estoppel claim must plead (1) someone made him "a promise that [it] should have reasonably expected would induce action or forbearance[,]" (2) he "actually took action or refrained from taking action in reliance on the promise[,]" and (3) "injustice can be avoided only by enforcing the promise."[90] B&B Hotels is correct a person can only recover under a promissory estoppel theory where he does not have an existing contract related to the alleged promises.[91] Regardless of whether the offer letter bars Mr. Hazard's

11

promissory estoppel claim, Mr. Hazard does not plead facts allowing us to plausibly infer one. "[B]road and vague implied promise[s]" cannot be the basis for promissory estoppel.[92] Mr. Hazard claims B&B Hotels promised to provide him with a competent chief executive officer and in-house counsel without identifying specific persons or qualities B&B Hotels deemed competent or sufficient. We dismiss Mr. Hazard's promissory estoppel claim without prejudice.

### G. We dismiss Mr. Hazard's unjust enrichment claim in part.

Mr. Hazard claims B&B Hotels is unjustly enriched because he worked "tirelessly" without being "paid appropriate compensation."[93] B&B Hotels asks us to dismiss Mr. Hazard's unjust enrichment claim because the parties' written agreement precludes it and because he does not otherwise plead facts supporting it.[94] Mr. Hazard reiterates B&B Hotels is unjustly enriched because it did not pay him "the bonus compensation promised" or "his promised severance pay."[95] He also claims B&B Hotels is unjustly enriched because it failed to reimburse him for expenses he incurred on B&B Hotels's behalf.[96] We agree with B&B Hotels in part.

We dismiss Mr. Hazard's claim for unjust enrichment based on B&B Hotels's failure to pay him bonuses or severance. An unjust enrichment claim is not available when the parties have a contract.[97] Mr. Hazard cannot rely on binding promises B&B Hotels made in its offer letter to establish an unjust enrichment claim. We dismiss his claim for unjust enrichment based on B&B Hotels's alleged failure to pay him bonuses or severance.

But Mr. Hazard has pleaded facts allowing us to plausibly infer a claim for unjust enrichment based on B&B Hotels's failure to reimburse him for expenses. A person claiming unjust enrichment must show: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of

value."[98] Mr. Hazard states he incurred expenses on B&B Hotels's behalf but B&B Hotels did not reimburse him.[99] We deny B&B Hotels's Motion to dismiss Mr. Hazard's unjust enrichment claim related to expense reimbursements.

### H.  We dismiss Mr. Hazard's fraudulent inducement claim.

Mr. Hazard claims B&B Hotels induced him to work for it by fraudulently promising him a competent team and severance pay.[100] B&B Hotels asks us to dismiss this claim because Mr. Hazard does not allege facts suggesting B&B Hotels knew it would replace its chief executive officer and legal team at the time it made its promises in November 2022.[101] Mr. Hazard responds B&B Hotels's actions show it did not intend to follow through on its promises at the time it made them.[102] We agree with B&B Hotels.

A person suing for fraudulent inducement must plead: "(1) [a] representation (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injuring was proximately caused by the reliance."[103] The person must satisfy the heightened pleading standard the Supreme Court imposes in Federal Rule of Civil Procedure 9(b) for claims based on fraud or mistake.[104] He must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation" into his claim.[105] For example, he must identify a speaker of any fraudulent statement.[106]

Mr. Hazard does not identify who represented he would have a competent team to assist him with meeting his bonus requirements.[107] He does not meet the heightened pleading standard for fraud Rule 9(b) requires. He also has not alleged facts suggesting the unidentified speaker knew the false nature of the promises when making them. He instead alleges B&B Hotels "realized"

"several of the assurances" it made to him for over two years of his employment.[108] Mr. Hazard does not allege facts suggesting someone at B&B Hotels made fraudulent representations to him. We dismiss his claim for fraudulent inducement without prejudice.

### I. Mr. Hazard pleaded facts allowing us to plausibly infer his protected employee status under Pennsylvania's Wage Payment and Collection Law.

B&B Hotels asks us to dismiss Mr. Hazard's Pennsylvania Wage Payment and Collection Law claim because Mr. Hazard is not a Pennsylvania employee under the Law.[109] Mr. Hazard responds he is based in Pennsylvania and we already found he pleaded sufficient facts to show he is an employee under the Law.[110] We again see no reason to reconsider our March 20, 2026 decision. We deny B&B Hotels's Motion to dismiss Mr. Hazard's Pennsylvania Wage Payment and Collection Law claim.

### III. Conclusion

We grant B&B Hotels's Motion in part and deny it in part. We deny transfer to Florida. Mr. Hazard does not state a claim for breach of contract related to a competent team, breach of an implied contract for employment, promissory estoppel, unjust enrichment related to bonuses and severance, and fraudulent inducement. But he pleads facts supporting his wrongful termination claim, breach of contract claim related to his severance package, unjust enrichment claim related to expense reimbursements, and Pennsylvania Wage Payment and Collection Law claim.

---

[1] *See* ECF 7 ¶¶ 14–15, 32.

[2] *See id.* ¶¶ 30–31.

[3] *See id.* ¶¶ 35–39.

[4] *See id.* ¶ 40.

[5] *See id.* ¶ 12.

[6] *See id.* ¶¶ 65–69.

14

[7] *See id.* ¶ 77.

[8] *See id.* ¶¶ 80–85.

[9] *See id.* ¶¶ 91–96.

[10] *See id.* ¶¶ 149–51.

[11] *See id.* ¶¶ 153–57.

[12] *See id.* at ¶¶ 151, 171–72, 188.

[13] *See id.* ¶¶ 207–12.

[14] *See id.*

[15] *See id.* ¶ 219.

[16] *See id.* ¶¶ 236–95.

[17] *See id.* ¶¶ 282–95.

[18] *See* ECF 18. In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "'identify allegations that . . . "are not entitled to the assumption of truth"' because those allegations 'are no more than conclusion[s]'"; and (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations . . . and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' . . . , we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quotations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[19] *See* ECF 20.

[20] *See* ECF 20-1 at 19–25; ECF 23 at 1, 9.

[21] *See* ECF 20-1 at 19–21 (arguing we should not defer to Mr. Hazard's forum preference because the events giving rise to his claim occurred in Florida); ECF 16-1 at 9–10 (same); ECF 20-1 at 23–24 (arguing Florida is more convenient because the majority of witnesses live in Florida and because B&B Hotels's business records are in Florida; ECF 16-1 at 10–11 (same); ECF 20-1 at

24–25 (arguing Florida's interest in resolving the matter is stronger than Pennsylvania's interests); ECF 16-1 at 11–12 (same).

[22] *See* ECF 22-2 at 20 n.5.

[23] *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)).

[24] *See In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232–33 (3d Cir. 2002) (emphasis added); *see also Chase Bank USA N.A. v. Hess*, No. 08-121, 2011 WL 45132, at *5 (D. Del. Jan. 6, 2011) (applying the law of the case doctrine to a party's renewed motion to transfer venue).

[25] *See Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 836 (3d Cir. 2022) (quoting *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991)).

[26] *See id.* (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).

[27] *See Am. C.L. Union v. Mukasey*, 534 F.3d 181, 188 (3d Cir. 2008) (quoting *Council of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999)).

[28] *See* ECF 23 at 1.

[29] *See* ECF 20-1 at 10 n.4.

[30] *See* ECF 22-2 at 9 n.2.

[31] *See Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.").

[32] *See LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996) (citing *Cipolla v. Shaposka*, 267 A.2d 854 (Pa. 1970); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 & n.15 (3d Cir. 1991)); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229–30 (3d Cir. 2007) (describing the first question as "determining if there is an *actual* or real conflict between the potentially applicable laws" (emphasis in original)).

[33] *See Shoemaker v. HedgeCoVest LLC*, No. 20-6127, 2021 WL 6106423, at *3 (E.D. Pa. Apr. 30, 2021) ("I will . . . apply Pennsylvania law to the . . . promissory estoppel claim[], as there appears to be no conflict with Florida law related to [this] Count[]."); *Broederdorf v. Bacheler*, 129 F. Supp. 3d 182, 195 (E.D. Pa. 2015) ("[Unjust enrichment] has nearly identical elements under both Florida and Pennsylvania law . . . . Therefore we find that there is no conflict and we will apply Pennsylvania law."); *id.* ("Florida's and Pennsylvania's laws on [fraud in the inducement] have no relevant differences, as each requires plaintiffs to prove nearly identical elements to sustain such a claim . . . . Thus, there is no conflict and the law of the forum state, Pennsylvania, applies.").

[34] *Compare Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (providing a breach of contract claim in

Pennsylvania requires "(1) the existence of a contract, including its essential terms, (2) a breach of the contract[,] and, (3) resultant damages"), *with Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. Dist. Ct. App. 2008) (providing a breach of contract claim in Florida requires "(1) a valid contract; (2) a material breach; and (3) damages").

We are uncertain as to a conflict for Mr. Hazard's breach of implied contract for employment based on additional consideration claim. Florida law may not allow this claim but the parties do not adequately brief the issue. So we apply Mr. Hazard's preferred Pennsylvania law for now and dismiss the claim as described in this Memorandum. We defer further addressing the conflicts issue unless or until we review a renewed claim.

[35] *See Broederdorf*, 129 F. Supp. 3d at 193 ("If there is no conflict between the laws of competing states, no further analysis is necessary and courts apply the law of the forum state." (citing *State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 F. App'x 182, 185 (3d Cir. 2006); *Austin v. Dionne*, 909 F. Supp. 271, 274 (E.D. Pa. 1995)).

[36] *See Javitz v. Luzerne Cnty.*, 344 A.3d 505, 509 n.7 (Pa. Commw. Ct. 2025).

[37] *See Hartley v. Ocean Reef Club, Inc.*, 476 So.2d 1327, 1330 (Fla. Dist. Ct. App. 1985) ("[W]e hold that a common law cause of action for retaliatory or wrongful discharge does not exist in Florida."); *Selby v. Tyco Healthcare Grp., L.P.*, 301 F. App'x 908, 910 (11th Cir. 2008) ("[The injured party] was an at-will employee and is not able to recover for wrongful termination under Florida's common law.").

[38] *See Hammersmith*, 480 F.3d at 230 (explaining there is a true conflict if both "jurisdictions' interests would be impaired by the application of the other's laws"); *Barbey v. Unisys Corp.*, No. 05-1323, 2006 WL 8459436, at *4–5 (E.D. Pa. May 10, 2006) (finding a true conflict existed between Pennsylvania and Swiss law for wrongful termination claims where they defined employer differently, applying them would "produce[] different results," and both jurisdictions had interests in regulating employment relationships or deterring harm), *aff'd*, 256 F. App'x 532 (3d Cir. 2007)).

[39] *See LeJeune*, 85 F.3d at 1071.

[40] *See Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005) (citing *In re Est. of Agostini*, 457 A.2d 861, 871 (Pa. Super. Ct. 1983)).

[41] *See* Restatement (Second) Conflict of Laws § 145; *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 463 (3d Cir. 2006) ("The Second Restatement dictates different approaches depending on the substantive law at issue . . . . [W]e must first characterize the particular issue before the court as one of tort, contract, or corporate law . . . ."); *Taylor v. Mooney Aircraft Corp.*, 430 F. Supp. 2d 417, 429 (E.D. Pa. 2006) (applying section 145 to a tort claim); *Russo v. Allegheny Cnty.*, 125 A.3d 113, 118 (Pa. Commw. Ct. 2015) (referring to a wrongful termination claim as a tort claim).

17

[42] *See Hammersmith*, 480 F.3d at 231 (quoting *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987)).

[43] *See Nelson v. Indegene, Inc.*, No. 25-1284, 2025 WL 3114386, at \*5–6 (D.N.J. Nov. 6, 2025) (considering similar New Jersey conflict of law analysis and concluding "it would be premature . . . to determine, based solely on the pleadings, which state has the most significant interest" in the claims given the parties' dispute regarding whether the employee "was an employee of New Jersey or Illinois").

[44] *See* ECF 7 ¶¶ 237–38.

[45] *See* ECF 20-1 at 10–11; ECF 23 at 2–3.

[46] *See* ECF 22-2 at 9–12.

[47] *See Javitz*, 344 A.3d at 520 (quoting *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000)). A former employee can only use this limited "public policy exception" to at-will employment when he has "no available statutory remedy." *See id.* (citing *Weaver v. Harpster*, 975 A.2d 555, 568 n.10 (Pa. 2009)).

[48] *See Mikhail v. Pa. Org. for Women in Early Recovery*, 63 A.3d 313, 317 (Pa. Super. Ct. 2013) (quoting *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 244 (Pa. Super. Ct. 2000)) (explaining other than these three categories we may only "find a public policy exception that will sustain a wrongful termination action . . . if the public policy 'is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it'" (quoting *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009))).

[49] *See* ECF 7 ¶¶ 149–51.

[50] *See id.* ¶¶ 153–57.

[51] *See id.* ¶¶ 151, 171–72, 188.

[52] *See* 18 PA. CONS. STAT. § 4107(a)(8); ECF 22-2 at 10 (citing 18 PA. CONS. STAT. § 4107(a)(7)–(8)).

[53] *See Difiore v. CSL Behring, U.S., LLC*, No. 13-05027, 2014 WL 4632324, at \*4 (E.D. Pa. Sept. 17, 2014) ("The Pennsylvania Superior Court has held that a violation of public policy can occur when an employer requires an employee to commit a crime . . . . Plaintiff has pleaded that her termination resulted from her 'refusal to engage in unethical and illegal activity,' . . . and some of the conduct alleged could qualify as a violation of 18 Pa. Cons. Stat. § 4107, even though Plaintiff did not specifically cite that statute in her complaint.").

[54] *See* ECF 20-1 at 11–13; ECF 23 at 3–4.

[55] *See* ECF 7 ¶¶ 243, 249.

[56] *See* ECF 20-1 at 11–13; ECF 23 at 3–4.

[57] *See* ECF 22-2 at 12–14.

[58] *See Lascoli v. Thomas A. Fahr Masonry Contractors*, -- A.3d --, No. 437-2025, 2026 WL 819523, at *3 (Pa. Super. Ct. Mar. 25, 2026).

[59] *See Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 942 (Pa. Super. Ct. 2011).

[60] *See* ECF 20-1 at 11–13.

[61] *See* ECF 20-3 at 2–4.

[62] *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[63] *See* ECF 7 at ¶¶ 36, 40.

[64] *See* ECF 22.

[65] *See* ECF 20-3 at 2 (showing the offer letter states "If your employment is terminated by the Company without cause, you will, contingent in all respects on your execution of a Company-standard release, receive severance of twelve (12) months' base salary, paid in accordance with the Company's normal payroll procedures over the course of the severance period . . . .").

[66] *See* ECF 20-1 at 13.

[67] *See* ECF 22-2 at 14.

[68] *See* ECF 20-1 at 11–13.

[69] *See* ECF 22-2 at 12–14.

[70] *See* ECF 20-3 at 2–4.

[71] *See id.*

[72] *See Lascoli*, 2026 WL 819523, at *3 (quoting *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1194 (Pa. Super. Ct. 1987), *appeal denied*, 536 A.2d 1331 (Pa. 1987)).

[73] *See id.* (quoting *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 484 (Pa. Super. Ct. 1984)).

[74] *See* ECF 7 ¶¶ 243, 249.

[75] *See id.* ¶¶ 256–57.

19

[76] *See* ECF 20-1 at 13–14; ECF 23 at 4–5.

[77] *See* ECF 22-2 at 14–15.

[78] *See Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995).

[79] *See Woods v. Era Med LLC*, 677 F. Supp. 2d 806, 817 (E.D. Pa. 2010) (explaining the employee has the burden to produce "clear and precise evidence" showing an "implied-in-fact" contract for performance) (citing *Scully v. U.S. WATS, Inc.*, 238 F.3d 497, 505 (3d Cir. 2001)).

[80] *See Donahue*, 753 A.2d at 245 (citing *Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70, 72–73 (Pa. Super. Ct. 1991)).

[81] *See id.* (quoting *Cashdollar*, 595 A.2d at 73).

[82] *See id.* (citing *Cashdollar*, 595 A.2d at 73).

[83] *See id.* (quoting *Cashdollar*, 595 A.2d at 73).

[84] *See id.* (citing *Veno v. Meredith*, 515 A.2d 571, 580 (Pa. Super. Ct. 1986)).

[85] *See* ECF 7 ¶ 258.

[86] *See id.* ¶¶ 12, 32, 219.

[87] *See id.* ¶ 264.

[88] *See* ECF 20-1 at 14–16; ECF 23 at 5–7.

[89] *See* ECF 22-2 at 15–16.

[90] *See Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717–18 (Pa. Super. Ct. 2005) (quoting *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. Ct. 1997)).

[91] *Cf. Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) ("In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted."); *W. Chester Univ. Found. v. MetLife Ins. Co. of Conn.*, 259 F. Supp. 3d 211, 223 (E.D. Pa. 2017) (citing *Ne. Power Co. v. Balcke-Durr, Inc.*, No. No. 97-4836, 1999 WL 674332, at *1 (E.D. Pa. Aug. 20, 1999)) (noting a person can bring a promissory estoppel claim in addition to a breach of contract claim if "the promises upon which [a person] based [his] claim for promissory estoppel were separate and distinct from the substance of the contract").

[92] *See Ankerstjerne v. Schlumberger, Ltd.*, 155 F. App'x 48, 51 (3d Cir. 2005) (citing *C&K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988)) (affirming summary judgment on promissory estoppel claim based on a promise to provide compensation because the

identified statements did not "specify 'how much the plaintiff would be paid, by whom he would be paid, how payment was to be calculated, or when the plaintiff would be paid'" (quotation omitted)).

[93] *See* ECF 7 ¶ 270.

[94] *See* ECF 20-1 at 16–17.

[95] *See* ECF 22-2 at 16.

[96] *See id.*

[97] *See Ruby v. Abington Mem'l Hosp.*, 50 A.3d 128, 136 (Pa. Super. Ct. 2012) ("In Pennsylvania, the quasi-contractual doctrine of unjust enrichment . . . does not apply when a written agreement or express contract exists between the parties."); *McGuckin v. Brandywine Realty Tr.*, 185 F. Supp. 3d 600, 608 (E.D. Pa. 2016) ("Plaintiff attempts to argue that he was treated inequitably based on [his employer's] obligations under [their agreement] . . . . However, an unjust enrichment claim that presupposes the existence of a valid and enforceable contract is not cognizable under Pennsylvania law.").

[98] *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) (quoting *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct.1995)).

[99] *See* ECF 7 at ¶ 216.

[100] *See id.* ¶ 275.

[101] *See* ECF 20-1 at 17–18; ECF 23 at 7–8.

[102] *See* ECF 22-2 at 16–18.

[103] *See Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.*, 7 A.3d 278, 290 (Pa. Super. Ct. 2010) (quoting *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1250–51 (Pa. Super. Ct. 2002)).

[104] *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.");

[105] *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

[106] *See Rogers v. Gentex Corp.*, No. 16-00137, 2017 WL 889624, at *7 (M.D. Pa. Mar. 6, 2017) (citing *Klein v. Gen. Nutrition Co. Inc.*, 186 F.3d 338, 345 (3d Cir. 1999)) (dismissing fraudulent inducement claim because employee did not "identify any speaker of the allegedly fraudulent statements").

22

---

[107] *See* ECF 7 ¶¶ 34–36 (claiming B&B Hotels assured him without identifying a specific speaker).

[108] *See id.* ¶¶ 41–42, 46–47.

[109] *See* ECF 20-1 at 18–19.

[110] *See* ECF 22-2 at 18–19; ECF 18.